UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM WALKER #183367,

       Plaintiff,                            Case No.  93-71641

v.                                           Magistrate Judge R. Steven Whalen

K. BEALS and O. BOYD,

       Defendants.

_____/

**OPINION AND ORDER DIRECTING THE MICHIGAN
DEPARTMENT OF CORRECTIONS TO GRANT PLAINTIFF
REASONABLE ACCESS TO LEGAL MATERIALS**

**I.    BACKGROUND**

This is a civil rights action filed in 1993 by Plaintiff William Walker, No. 183367, a prison inmate in the custody of the Michigan Department of Corrections (MDOC). Although the case was filed many years ago, it is still an active case in this Court, and a jury trial is scheduled for November 27, 2006, at the United States Courthouse in Detroit, Michigan. Indeed, U.S. District Judge Gerald E. Rosen issued an order denying the Defendants' motion to dismiss for failure to prosecute, noting that the case has been "actively litigated" since its inception.

The Plaintiff is proceeding *pro se*, although his former attorney, Daniel Manville, has

been appointed to assist him as "standby counsel." Plaintiff has filed a number of motions and notices requesting that he be provided meaningful access to his legal materials, as well as a word processor. Presently pending before this Court are Plaintiff's Motion for Ancillary Order for MDOC Agents to Stop Trashing Plaintiff's Legal Property [Docket #164, filed 3-6-06]; Notice to the Court of Withholding of Legal Materials [Docket #178, filed 8-15-06]; Plaintiff's Response to Defendants' Reply to Plaintiff's Motion for Possession of his Word Processor [Docket #180, filed 9-7-06]; Affidavit of William Walker in Regards: Not Being Able to Provide Copies of Referred to Exhibits [Docket #181, filed 9-8-06]; and Notice to the Court [Docket #182, filed 9-12-06].

On June 16, 2006, the Court held a telephonic status conference with Plaintiff, attorney Manville, and Kevin Thom, counsel for the Defendants. Following that conference, the Court issued an Order directing that Mr. Manville, accompanied by Plaintiff Walker, "be given access to inspect Mr. Walker's documents stored in the Ionia Maximum Correctional Facility property room or in any other area of the prison, but not in the actual possession of Mr. Walker." The Court also entered a separate order permitting Mr. Manville to obtain copies of all documents in the Court's file, at no cost.

On July 4, 2006 (!), attorney Manville filed a Report as to a Meeting of June 30, 2006 with Plaintiff William Walker [Docket #177]. Mr. Manville stated that he, the Plaintiff, and two law students spent some six and one-half hours going through 11 footlockers of material. They removed approximately eight inches of material believed to be related to this lawsuit, and placed it in a separate locker, along with documents copied from the Court's file. (This

material will be referred to as "the twelfth locker").  The other 11 lockers "were given to the Resident Unit Manager who was to schedule a hearing as to these materials."

The Plaintiff raises three basic issues related to his legal materials: (1) that he is not being provided with reasonable access to "the twelfth locker" of legal materials that were culled and compiled by Mr. Manville and him on June 30, 2006; (2) that the MDOC wishes to dispose of the other 11 lockers of material, some of which pertains to the present lawsuit, and will not give him reasonable access to those materials; and (3) that he does not have access to a word processor.

## II.    LEGAL PRINCIPLES

In essence, the Plaintiff's request for legal materials and equipment involves a tension between his First Amendment right to access to the courts and the MDOC's interest in prison order and security.

Prison inmates do have a constitutionally protected right of access to the courts, grounded in the First Amendment.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances").   In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that to establish a claim for denial of access to the courts, the inmate must show that he suffered an actual injury as a result of the alleged denial.  In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

At the same time, while inmates do not leave their constitutional rights–including the First Amendment right of court access–at the prison door, *see Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989), "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Turner v. Safley,* 482 U.S. 78, 84 (1987).  Furthermore, because "the federal judiciary is particularly ill equipped to deal with the complex and intractable problems of prison administration, we generally defer to the judgments of prison officials in upholding regulations." *Thompson v. Campbell,* 81 Fed.Appx. 563, 567 (6th Cir.2003)(internal citations omitted).  A prison regulation that impacts a constitutional right is appraised at a deferential level of scrutiny.  Its reasonableness is assessed with attention to four factors: "first, whether the restriction bears a 'valid, rational connection' to the 'legitimate governmental interest put forward to justify it,' such that the "asserted goal is not so remote as to render the policy arbitrary or irrational," *Amatel v. Reno,* 156 F.3d 192, 194, 332 U.S.App.D.C. 191, 193 (D.C. Circuit 1998); *Turner,* at 89-90; second, "whether inmates retain alternative means of exercising the circumscribed right, *id.; Turner,* at 90;  third, the court must consider "the costs that accommodating the right imposes on other inmates, guards, and prison resources;" and fourth, whether there are alternatives to the regulation that 'fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.'" *Turner,* at 90-91.

### III.  ANALYSIS

Trial in this case will commence in less than two months, on November 27, 2006. Thus, there is an immediacy to Plaintiff's need to have reasonable access to his legal

-4-

materials in order to prepare for trial. If he does not have *reasonable* (as opposed to unlimited) access to papers, pleadings and documents, he may well suffer prejudice to his case, in violation of his First Amendment right of access to the courts. On the other hand, the Plaintiff is not in the general prison population, but rather in "detention" status, which subjects him to more stringent security regulations, including restrictions on what he can have in his cell. Nevertheless, there is a practical way to balance and reconcile *Turner v. Safely* with *Bounds v. Smith*, and give the Plaintiff reasonable access to his legal materials while at the same time giving deference to MDOC security concerns.

### A. The Twelfth Footlocker

The footlocker into which the Plaintiff and attorney Manville placed copies of the court file along with the approximately eight inches of documents relating to this case is of particular importance to the Plaintiff. It appears that the Plaintiff is not permitted to keep this material in his cell, and is given only sporadic and infrequent opportunities to view the material outside his cell. The *status quo* essentially precludes the Plaintiff from effectively preparing for trial, and therefore serves to completely deny the First Amendment right of access, with no countervailing benefit to prison security. Neither the MDOC nor the Defendants have made it clear why having a stack of legal papers in one's cell furthers a security interest. Indeed, prison officials informed attorney Manville that if Plaintiff were in "segregation" rather than "detention," he would be permitted to keep his legal material in his cell. *See* Report as to Meeting of June 30, 2006 [Docket #177]. It therefore appears that the restriction serves a punitive, rather than a true security interest, but under the *Turner*

formulation, that is insufficient to justify the total denial of a constitutional right.

The Court will order that the MDOC provide the Plaintiff with regular and substantial access to this legal material until the conclusion of trial. However, in deference to the MDOC's interest in fashioning its own methods of maintaining order, the Court will permit the MDOC to elect one of the following three options, neither of which would impose more than a *de minimis* cost on legitimate penological interests:

**(1) The MDOC will permit the Plaintiff to keep the contents of "the twelfth locker" in his cell. These documents may be kept in the locker itself, in a duffel bag, a box, or any other suitable container; or**

**(2) The MDOC will permit the Plaintiff to have access to the material in "the twelfth locker"** *in* **his cell for a minimum of twenty (20) hours per week, during daytime hours; or**

**(2) The MDOC will permit the Plaintiff to have out-of-cell access to the material in "the twelfth locker" for a minimum of twenty (20) hours per week.**

At all times during which Plaintiff is given access to any of his legal material, he will also be provided with paper and either a pencil or pen.

### B.    The Other Eleven Lockers

Plaintiff represents that the other 11 lockers contain material that is pertinent to the present case. However, the Court recognizes that it would be problematic for the Plaintiff to have all of this material–much of which is likely *not* relevant–in his cell. **Therefore, the Court will order that the Plaintiff be given a minimum of four (4) hours per week of**

**out-of-cell access to the other 11 lockers, in addition to any out-of-cell time provided for reviewing material in "the twelfth locker." The MDOC will not dispose of material in the other 11 lockers while this case is pending.**

### C. The Word Processor

In his Report as to Meeting of June 30, 2006 [Docket No. 177], attorney Manville states that he spoke with the Deputy Warden regarding the Plaintiff's word processor, and received the following reply:

> "The Deputy Warden believes that this would be a threat to security because many of the parts can be removed from the machine. The Deputy Warden believes that Plaintiff had broken off one of the letters to his typing wheel, which she stated can be used to pick handcuffs."

It should be noted that the Plaintiff is serving a 2 to 10 years sentence for assaulting an employee or escaping jail. In addition, the Plaintiff has been provided with the assistance of Mr. Manville and the law students at the Wayne State University Law School Clinic, and he has demonstrated the ability to file pleadings with this Court over the past several months. Therefore, giving deference to the prison's well-founded security concerns, *Turner v. Safely, supra*, and weighing those concerns against the non-essential nature of the Plaintiff's request for a word processor, **the Court will DENY Plaintiff's request for a word processor at this time.**

### IV. CONCLUSION

Accordingly, Plaintiff's motions, requests and notices regarding legal material and property [Docket Nos. 164, 178 and 182] are GRANTED IN PART AND DENIED IN

PART, as set forth in this Opinion and Order.  As to the materials to which the Court has herein granted the Plaintiff access, the MDOC, including the Warden, Deputy Warden and Staff at the Ionia Maximum Correctional Facility, shall comply with this Opinion and Order without delay.

    SO ORDERED.

                                                S/R.  Steven Whalen
                                                R.  STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated:  October 12, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 12, 2006.

                                                S/Gina Wilson
                                                Judicial Assistant